509 A.2d 928

Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board, Petitioner *v.* Jack Clark, Respondent.

Argued February 7, 1986, before Judges MacPhail and Colins, and Senior Judge Blatt, sitting as a panel of three.

*Eileen S. Maunus,* Assistant Counsel, with her, *Gary F. DiVito,* Chief Counsel, for petitioner.

*Kimber L. Latsha,* with her, *John Adam Matlawski* and *John D. Killian, Killian & Gephart,* for respondent.

Opinion by Judge MacPhail, May 19, 1986:

The Pennsylvania Liquor Control Board (PLCB) appeals here from an order of the Board of Claims (Board) which entered judgment in the amount of $100.00 plus interest in favor of Jack Clark (Claimant),

an Assistant Manager I at PLCB Store No. 5157, Moyamissing Plaza, Philadelphia, Pennsylvania.

While on duty December 6, 1982, Claimant received a cash sum for deposit in the amount of $1400.00 from a clerk. That clerk had counted the deposit twice in Claimant's presence. In accordance with the PLCB's "Manual of Instructions for Store Operation, Armored Car Collection and Change Service" (Manual), Claimant personally counted the bills twice, placing all bills face up. He then noted the amount, $1400.00, on the strap, initialed the strap, placed the deposit in a currency packet, and dropped the strapped currency packet in the store's safe. Claimant also recorded the amount of deposit on the deposit envelope, which is left outside of the safe.

The opening of the store safe requires two keys, one in the hands of the PLCB and the other in the hands of the courier service. Claimant was not on duty when this deposit was retrieved from the safe. The deposit was taken to a bank, when recounting revealed the actual amount of deposit to be $1300.00. Following an investigation, the PLCB's Audit Division determined that Claimant was responsible for the $100.00 shortage. The PLCB then deducted $100.00 from Claimant's pay.

On August 4, 1983, Claimant filed a Petition for Claim before the Board, arguing that he did not cause the $100.00 shortage and that it could not be charged to him. Despite PLCB objections to the Board's jurisdiction, the Board entered judgment in Claimant's favor based on its determination that the PLCB did not have a basis to withhold the monies from Claimant's pay.

The first issue presented for our consideration is whether the Board properly assumed jurisdiction over Claimant's claim. Section 4 of the Act of May 20, 1937 (Act of 1937), P.L. 728, *as amended,* 72 P.S. §4651-4 provides, *inter alia,* that "[t]he Board of Claims shall

have exclusive jurisdiction to hear and determine all claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth, where the amount in controversy amounts to $300.00 or more." We have previously required that *both* a contract claim against the Commonwealth and an amount in controversy of at least $300.00 be present in order for the Board to have jurisdiction. *Pennsylvania Liquor Control Board v. Shulin,* 80 Pa. Commonwealth Ct. 311, 471 A.2d 599 (1984). *See also Kusnir v. Leach,* 64 Pa. Commonwealth Ct. 65, 439 A.2d 223 (1982). Since the amount in controversy here is less than the required $300.00, the PLCB argues that the Board lacked jurisdiction over this claim.

However, under Section 4 of the Act of 1937, the Board also enjoys *exclusive* jurisdiction to hear and determine those claims which were previously acted on by the Auditor General and State Treasurer pursuant to Article X of The Fiscal Code (Fiscal Code), Act of April 9, 1929, P.L. 343, *as amended,* 72 P.S. §§1001-1004. Regulation 851.2, 61 Pa. Code §851.2 sets forth the jurisdiction of the Auditor General and State General acting as the original Board of Claims:[1]

> The Board of Claims shall examine and adjust claims against the Commonwealth arising from: (1) *the furnishing of goods, or services, or both, to the Commonwealth, where the furnishing of such goods, or services, or both, is not within the terms of a valid, existing contract between the Commonwealth and the claimant,* or, if pursuant to a contract between the Commonwealth and the claimant, where the amount of the claim is less than $300; and

---

[1] The PLCB's contention that Regulation 851.2 is an invalid enlargement of the Board's jurisdiction is patently without merit.

  (2)  action or inaction by Commonwealth employes giving rise to an implied contract to compensate the claimant. (Emphasis added.)

At all times relevant herein, a "Memorandum of Understanding between Commonwealth of Pennsylvania and Independent State Stores Union, Liquor Stores Manager Unit" (Memorandum) was in effect. That Memorandum recommended adjustments to the wages, hours, terms and conditions for first-level supervisors, of which Claimant was one. *See* Article VII, Section 704 of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, 43 P.S. §1101.704, repealed in part by 71 Pa. C. S. §5955. The Memorandum also included the following statement:

It is understood that this Memorandum and the recommendations contained herein, whether or not implemented in whole or in part, do not and shall not constitute a collective bargaining agreement or contract binding on the parties, but shall represent a meet and discuss understanding and Memorandum of Recommendations effective July 1, 1981 except as herein provided, through June 30, 1983.

It is Claimant's position that because the Memorandum is not a contract, the Board has jurisdiction over his claim. The PLCB maintains, however, that the Memorandum is contractual in nature and *similar* to a collective bargaining agreement. Since collective bargaining agreements would not fall under the Board's expanded jurisdiction, argues the PLCB, neither should the Memorandum. *See Shulin* (collective bargaining agreement not within jurisdiction of Auditor General and State Treasurer under Fiscal Code).

The PLCB's argument misses the point: a Memorandum of Understanding is *not* a collective bargaining agreement and cannot be considered to have the same

effect as a collective bargaining agreement; neither is it a contract. *See Shaffer v. Pennsylvania Liquor Control Board,* 92 Pa. Commonwealth Ct. 374, 500 A.2d 917 (1985) (Memorandum has a different nature than a collective bargaining agreement). Because the Memorandum is neither a binding contract, under its own terms, nor a collective bargaining agreement, we believe that it would fall within the Board's exclusive jurisdiction emanating from the Fiscal Code. This view is buttressed by *Brey v. Pennsylvania Liquor Control Board,* 33 Pa. Commonwealth Ct. 213, 381 A.2d 228 (1978). Under facts similar to the instant case, Brey, a liquor store manager, filed a complaint in assumpsit to our original jurisdiction alleging that the PLCB had unlawfully withheld money from his pay to cover a cash shortage at his store. We dismissed the complaint but noted the following:

> [T]he Legislature has provided by the Fiscal Code for the adjustment and settlement of claims such as these by the Auditor General and State Treasurer, followed, if desired, by petition for resettlement, petition for review and appeal to this Court. Act of April 9, 1929, P.L. 343, §§1003, 1004, 72 P.S. §§1003, 1004. The leading case in the field concerns a claim made to the Liquor Control Board, refused by it, and filed with the Auditor General and State Treasurer pursuant to the cited provisions of The Fiscal Code. Merchants Warehouse Company v. Gelder et al., 349 Pa. 1, 36 A.2d 444 (1944).

*Brey,* 33 Pa. Commonwealth Ct. at 215-16, 381 A.2d at 229-230, quoting *Airport Inn v. Pennsylvania Liquor Control Board,* 10 Pa. Commonwealth Ct. 362, 366, 310 A.2d 723, 725 (1973). We believe that the Board properly assumed jurisdiction over the instant claim.

The PLCB argues, in the alternative, that the grievance procedure outlined in the Memorandum removes

the instant claim from the Board's jurisdiction, reasoning that the grievance procedure amounts to an agreement to arbitrate under the Arbitration Act of 1927, Act of April 25, 1927, P.L. 381, *formerly* 5 P.S. §§161-179, repealed by the Act of October 5, 1980, P.L. 693. Similar provisions are found in the Uniform Arbitration Act (UAA), 42 Pa. C. S. §§7301-7320. The applicable provision of the UAA provides:

> (c) *Government contracts.*—This subchapter shall apply to *any written contract* to which a government unit of this Commonwealth is a party to the same extent as if the government unit were a private person, except that *where a contract to which the Commonwealth government is a party provides for arbitration of controversies but does not provide for arbitration pursuant to any specified statutory provision, the arbitration shall be governed by this subchapter.*

42 Pa. C. S. §7302(c) (emphasis added). It is the PLCB's position that Recommendation No. 17 of the Memorandum[2] provides for arbitration of disputes without reference to a specified statutory procedure and that therefore the instant dispute is governed by the provisions of

---

[2] Recommendation No. 17 provides, in part:

GRIEVANCE PROCEDURE

All grievances or disputes which may arise concerning the interpretation or application of the Recommendations contained in this Memorandum which have been implemented or approved shall be handled by the following procedure.

A Civil Service employe may process his/her grievance through either the Civil Service appeal procedure or the Memorandum grievance procedure.

The Memorandum grievance procedure provides for a five step process, beginning with an attempted in-house resolution but which may result in outside arbitration.

the UAA.[3] As previously noted, however, the Memorandum is *not* a contract between the parties. Accordingly, the provisions of the UAA do not apply.

The PLCB's final argument is that the Board did not properly apply the Memorandum to Claimant's claim. Specifically, the PLCB contends that the Board erred in its interpretation of Recommendation No. 20. Recommendation No. 20 provides in full:

### CASH RESPONSIBILITY

Each manager handling cash shall be held responsible for any *personal* shortage (cash or cash equivalent) provided:

1. The manager is given his/her own register till.

2. The manager must be given the opportunity to count his/her cash at the beginning and close of his/her shift, and given the register readings that are taken at the beginning and close of his/her shift.

3. Only one such manager is empowered to ring up on the cash drawer for which the manager is responsible.

4. The manager is provided with means of locking the cash drawer when the register is unattended.

5. This responsibility shall be subject to a daily cash shortage allowance of twenty cents ($.20) per employee per day. Provisions of this subsection are not intended to prevent the Commonwealth from taking appropriate disciplinary action where there are too frequent cash shortages within the twenty cent ($.20) allowance. (Emphasis added.)

---

[3] We were precluded from addressing this argument in *Shaffer* because the relevant Memorandum of Understanding was not before the Board or this Court.

The PLCB has interpreted this recommendation to mean that a manager is responsible for *any* cash shortage that occurs while he is on duty; the Claimant interprets Recommendation No. 20 to apply only to cases involving shortages in a manager's personal cash register. The Board resolved this issue against the PLCB:

> It is rather obvious that the parties involved in this agreement were of the opinion that they did not create a contract nor did they create a Collective Bargaining Agreement nor are the parties bound by this agreement. Since there was no contract or agreement dealing with the factual situation here involved, no basis existed to warrant any deduction from claimant's wages.

(Opinion of Board dated May 9, 1985, at 10). "The Board is entrusted with the duty of fact finding." *State Highway and Bridge Authority v. E. J. Albrecht Company*, 59 Pa. Commonwealth Ct. 246, 255, 430 A.2d 328, 332 (1981). Under our established narrow scope of review,[4] we must affirm the Board unless we find that its order is not in accordance with the law or that there is not substantial evidence to support the findings of fact. *Id*.

A Memorandum of Understanding arrived at through the "meet and discuss" process is not binding on either the employer or the employee, but rather functions to *assist* the employer in its resolution of the issues in question. *See* Article III, Section 301(17) of PERA, 43 P.S. §1101.301(17) ("Meet and discuss" means the obligation of a public employer upon request to meet at reasonable times and discuss recommendations submitted by representatives of public em-

---

[4] Note that we are not presented with a question of an agency's interpretation of its own regulation, which of course must be given great deference on review.

ployes: Provided, That any decisions or determinations on matters so discussed shall remain with the public employer and be deemed final on any issue or issues raised.) The Board adopted Claimant's position and held that Recommendation No. 20 did not apply where a cash shortage occurred but the manager was not operating his own register during the relevant time period. The Memorandum itself supports the Board's interpretation. Therefore, we find no error in the Board's order and will affirm.

ORDER

The order of the Board of Claims dated May 9, 1985 at No. FC-329-83, is affirmed.