# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeremy Baney,                           :
                                        :
                    Plaintiff           :
                                        :
          v.                            :  No. 752 M.D. 2018
                                        :  Submitted:  May 22, 2020
Mike Fisher, Michael T. Madeira,        :
Kevin Barr, Christopher Schmidt,        :
and Josh Shapiro of the Pa. Attorney    :
General's Office, Russ Burcher of       :
the Pa. State Police,                   :
                                        :
                    Defendants          :


**OPINION NOT REPORTED**

**MEMORANDUM OPINION**
**PER CURIAM**                          **FILED:  August 26, 2020**


Before the Court are the preliminary objections (POs) of Jeremy Baney, an inmate at the State Correctional Institution (SCI) at Smithfield (Inmate), to the POs in the nature of a demurrer of Mike Fisher, Michael T. Madeira, Kevin Barr, Christopher Schmidt, and Josh Shapiro, former and current members of the Pennsylvania Office of Attorney General, and Russ Burcher of the Pennsylvania State Police, a former trooper (collectively, Commonwealth Respondents), to the Amended Civil Complaint (Amended Complaint) that Inmate filed in our original jurisdiction.[1]  We overrule Inmate's POs, sustain Commonwealth Respondents' POs, and dismiss the Amended Complaint with prejudice.

---

[1] Although Inmate styled his filing as an Amended Complaint, he should have filed a petition for review because that is the pleading that is used to commence an action against the Commonwealth and its officers under Chapter 15 of the Pennsylvania Rules of Appellate **(Footnote continued on next page…)**

The Pennsylvania Superior Court has summarized the criminal proceedings underlying Inmate's present incarceration, in relevant part, as follows:

> On March 3, 2002, [Inmate] was arrested and charged with numerous counts of drug-related offenses based on his involvement in a drug-distribution ring that operated across Lycoming, Clinton, and Centre Counties between 1997 and 2001. [Inmate] ultimately entered a negotiated guilty plea to one count of corrupt organizations, twenty-one counts of possession with intent to deliver (PWID) a controlled substance (marijuana), one count of criminal conspiracy, five counts of dealing in proceeds of unlawful activities, and one count of criminal use of a communication facility [in the Clinton County Common Pleas Court (trial court)]. In exchange for [Inmate's] guilty plea, the Commonwealth nol prossed 61 counts of various other criminal charges. On August 11, 2003, [Inmate] was sentenced, in accordance with his plea agreement, to a term of 20 to 39 years' incarceration. The trial court also imposed the . . . costs of prosecution and restitution[.]
>
> [Inmate] filed a timely appeal from his judgment of sentence. On appeal, [Inmate's] counsel sought to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967). . . . After reviewing counsel's *Anders* Brief, this Court agreed that [Inmate's] claims were frivolous. Accordingly, we granted counsel's petition to withdraw and affirmed [Inmate's] judgment of sentence in a published opinion[, and our] Supreme Court later denied

---

**(continued…)**

Procedure. *See, e.g.*, *MFW Wine Co., LLC v. Pennsylvania Liquor Control Board*, ___ A.3d ___, ___ n.1 (Pa. Cmwlth., No. 251 M.D. 2020, filed May 1, 2020), slip op. at 1 n.1 ("Consistent with the applicable rules of appellate procedure, the Court treats the Amended Complaint as a petition for review directed to this Court's original jurisdiction. *See* Pa. R.A.P. 1501(a)(3), 1502, 1503."). For the sake of clarity, we refer to Inmate's filing as the Amended Complaint in this memorandum opinion; however, consistent with the foregoing, we refer to the named defendants in the Amended Complaint as Commonwealth Respondents.

> [Inmate's] petition for permission to appeal. *Commonwealth v. Baney*, 860 A.2d 127, 132 (Pa. Super. 2004), *appeal denied*, 877 A.2d 459 (Pa. 2005).

*Commonwealth v. Baney* (Pa. Super., No. 581 MDA 2013, filed October 30, 2013), slip op. at 1-3.[2]

On April 4, 2019, Inmate filed the instant five-count Amended Complaint in which he alleges, *inter alia*, that Commonwealth Respondents violated his rights under Article I, Section 10 of the Pennsylvania Constitution[3] and the Wiretapping and Electronic Surveillance Control Act (Act)[4] in the investigation and criminal prosecution culminating in his guilty pleas and judgment of sentence. Specifically, Inmate contends that the initial investigatory pen register, of the total of 5 that were ultimately obtained, was used illegally by Commonwealth Respondents 9 to 10 hours before a valid order was issued by the trial court under the Act. Amended Complaint at 8, 9-11, 20, 29-30, 57. Inmate asserts that, as a result, all of the subsequent pen registers, search warrants, and wiretaps, and the subsequent investigation and criminal prosecution, were pursued and obtained by Commonwealth Respondents in bad faith, are invalid, and are actionable under Sections 5725 and 5726 of the Act.[5] *See id.* at 19-65.[6] Accordingly, Inmate seeks

---

[2] Inmate subsequently filed a number of unsuccessful petitions collaterally attacking his judgment of sentence, which are not relevant to our disposition of the instant POs. *See Baney*, slip op. at 3-11 (outlining Inmate's past petitions seeking to vacate his judgment of sentence).

[3] Pa. Const. art. I, §10. Article I, Section 10 states, in relevant part: "Each of the several courts of common pleas may, with the approval of the Supreme Court, provide for the initiation of criminal proceedings therein by information filed in the manner provided by law. No person shall, for the same offense, be twice put in jeopardy of life or limb[.]"

[4] 18 Pa. C.S. §§5701-5781.

[5] 18 Pa. C.S. §§5725, 5726. Section 5725 states:
**(Footnote continued on next page…)**

3

**(continued…)**

**(a) Cause of action.**—Any person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of this chapter shall have a civil cause of action against any person who intercepts, discloses or uses or procures any other person to intercept, disclose or use, such communication; and shall be entitled to recover from any such person:

> (1) Actual damages, but not less than liquidated damages computed at the rate of $100 a day for each day of violation, or $1,000, whichever is higher.
>
> (2) Punitive damages.
>
> (3) A reasonable attorney's fee and other litigation costs reasonably incurred.

**(b) Waiver of sovereign immunity.**—To the extent that the Commonwealth and any of its officers, officials or employees would be shielded from liability under this section by the doctrine of sovereign immunity, such immunity is hereby waived for the purposes of this section.

**(c) Defense.**—It is a defense to an action brought pursuant to subsection (a) that the actor acted in good faith reliance on a court order or the provisions of this chapter.

In turn, Section 5726 states:

**(a) Cause of action.**—Any aggrieved person shall have the right to bring an action in Commonwealth Court against any investigative or law enforcement officer, public official or public employee seeking the officer's, official's or employee's removal from office or employment on the grounds that the officer, official or employee has intentionally violated the provisions of this chapter. If the court shall conclude that such officer, official or employee has in fact intentionally violated the provisions of this chapter, the court shall order the dismissal or removal from office of said officer, official or employee.

**(Footnote continued on next page…)**

Commonwealth Respondents' "[r]emoval from office as per [Section 5726 of] the [Act] for violating the pen register by starting the first one early." *Id.* at 67. Pursuant to Section 5725, Inmate also seeks monetary damages "in the amount of $50,000,000.00," pre- and post-judgment interest, attorney fees, costs of this lawsuit, postage, and "[s]uch other and further relief as this Honorable Court deems just and proper." *Id.* at 67-70.[7]

---

**(continued…)**

> **(b) Defense.**—It is a defense to an action brought pursuant to subsection (a) that the actor acted in good faith reliance on a court order or the provisions of this chapter.

[6] Counts One and Two of the Amended Complaint assert direct claims under the Act based on Commonwealth Respondents' illegal use of the first pen register prior to obtaining a trial court order. *See* Amended Complaint at 19-36. Count Three asserts an "Abuse of Power" claim based on an "abuse of power and/or prosecutor misconduct" to "provoke" Inmate's "involvement in the importation of cocaine" and to deny him a fair trial in violation of his double jeopardy rights under Article I, Section 10 of the Pennsylvania Constitution. *Id.* at 37-45. Count Four asserts "Malicious Prosecution and Malicious Abuse of Process" claims because Commonwealth Respondents "acted with deliberate indifference or reckless disregard for [Inmate's] civil rights by targeting [him] for an unauthorized capture of the first pen register without a proper court order," and "by overcharging" him "to provoke [him] into action or conduct" in order "to prejudice [him] to the point where he has been denied a fair trial," again in violation of Article I, Section 10. *Id.* at 46-55. Finally, Count Five asserts a "Malicious Use of Criminal Process" claim because, again, Commonwealth Respondents "started 9-10 hours before the court authorized the capture of the first pen register," "and acted with reckless disregard for [his] civil rights" "by targeting [him] for malicious use of criminal process by overcharging [him] with criminal counts in [his] criminal information" "and plea offers" in violation of his double jeopardy rights under Article I, Section 10. *Id.* at 56-64.

[7] Inmate has filed numerous additional, intervening pleadings, as well as an appeal to the Pennsylvania Supreme Court, which have been disposed of by this Court and that Court and are not relevant to our disposition of the instant POs, which were timely filed pursuant to this Court's November 15, 2019 order directing the filing of the same.

On December 18, 2019, Commonwealth Respondents filed the instant POs to the Amended Complaint alleging, *inter alia*, that the Amended Complaint should be dismissed because all of the claims raised therein are barred by the relevant statute of limitations. Commonwealth Respondent POs ¶¶8-20. Inmate then filed his POs in response asserting, *inter alia*, that Commonwealth Respondents' statute of limitations POs should be overruled because such a defense may only be raised by answer and new matter, and the time for filing suit should be tolled due to his lack of knowledge of the illegal pen registers and Commonwealth Respondents' fraudulent concealment of them during discovery in the criminal prosecution. Inmate POs ¶¶2-11. Inmate also outlines his subsequent requests for the records related thereto under the Right-to-Know Law (RTKL),[8] the federal Freedom of Information Act (FOIA),[9] and petitions filed pursuant to the Post Conviction Relief Act (PCRA).[10] Inmate POs ¶¶1-11.

Although this Court cannot award the requested monetary damages under Section 5725 of the Act,[11] we will consider the cross-POs relating to the

---

[8] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

[9] 5 U.S.C. §552.

[10] 42 Pa. C.S. §§9541-9546.

[11] As outlined above, Section 5726(a) provides, in relevant part, "Any aggrieved person shall have the right to bring an action *in Commonwealth Court* against [Commonwealth Respondents] seeking the[ir] removal from office or employment on the grounds that the[y] ha[ve] intentionally violated the provisions of this chapter." 18 Pa. C.S. §5726(a) (emphasis added). In contrast, Section 5725(a) states, in pertinent part, "Any aggrieved person whose wire, electronic, or oral communication is intercepted, disclosed or used in violation of this chapter shall have a civil cause of action against [Commonwealth Respondents] . . . ." 18 Pa. C.S. §5725(a). Regarding the distinct language in the foregoing provisions, we have explained:

**(Footnote continued on next page…)**

(continued…)

Notwithstanding the basic tenet of statutory construction that the omission of language from a provision and inclusion of it in a similar provision is indicative of a different legislative intent, [the petitioner] argues that we have ancillary jurisdiction over his civil damages claim because we have jurisdiction over his claim seeking removal. Although we have found no direct authority indicating that the issue of jurisdiction has been definitively determined, we have observed as follows regarding the inclusion of jurisdictional language in Section 5726 and its omission in Section 5725:

> Significantly, [Section 5726(a)] expressly provides that an aggrieved person shall bring [his or her equitable cause of] action in the Commonwealth Court, although *the immediately preceding section, which creates a civil action for money damages, 18 Pa. C.S. §5725, provides no such language vesting this court with jurisdiction. Fundamental in statutory construction is the rule that, where a section of a statute contains a given provision, the omission of that provision from a similar section is significant to show a different intention existed.*

*Boettger* [*v. Miklich*, 481 A.2d 972, 975 n.2 (Pa. Cmwlth. 1984)] (emphasis added) (citations omitted). *See also Birdseye v. Driscoll*, [534 A.2d 548, 550 n.2 (Pa. Cmwlth. 1987)] (a removal case noting the distinction made in *Boettger* "between actions for damages under Section 5725 and an equitable cause of action for removal created by Section 5726, which contains express language vesting this Court with original jurisdiction")[,] and *Welch v. Palka*, (Pa. Cmwlth., No. 274 M.D. 2008, filed November 29, 2010), slip op. at 8 n.4, *aff'd*, [40 A.3d 1185 (Pa. 2012)] (single-judge opinion reiterating the distinction made in *Boettger* and noting: "[I]n the absence of specific language stating otherwise, this Court is arguably not vested with jurisdiction to hear claims made under either Sections 5741 or 5747 [of the Act, 18 Pa. C.S. §§5741 and 5747 (relating to civil and criminal proceedings for violations of the subchapter]). Accordingly, where the legislature specifically afforded jurisdiction to this Court in Sections 5726 and 5728 of the [Act], 18 Pa. C.S. §§5726 and 5728 [(conferring

**(Footnote continued on next page…)**

7

applicable statute of limitations for all of Inmate's claims in the interest of judicial

economy.[12] *See McCulligan v. Pennsylvania State Police*, 123 A.3d 1136, 1140

---

**(continued…)**

> jurisdiction on this Court to restrain violations of the Act)], for example, the absence of such language in other provisions indicates its intent not to afford this Court jurisdiction over other provisions even in situations where ancillary jurisdiction arguably could apply.

*McCulligan v. Pennsylvania State Police*, 123 A.3d 1136, 1139-40 (Pa. Cmwlth. 2015) (footnotes omitted). Accordingly, it is doubtful that jurisdiction over Inmate's Section 5725(a) cause of action has been conferred upon this Court.

Additionally, it is clear that Inmate has not presented a viable cause of action under Section 5726(a) of the Act. *See id.* at 1141 ("As former Chief Justice Castille stated in a concurring and dissenting statement regarding Section 5726 of the [Act]: 'The removal cause of action . . . [is] an extreme sanction that has rarely if ever been deployed, [and] was clearly intended to deter the most egregious intentional violations of personal privacy.'") (citation and footnote omitted).

[12] As this Court has stated:

> In ruling on preliminary objections, we must accept as true all well-pleaded material allegations in the petition for review, as well as all inferences reasonably deduced therefrom. The Court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them.

> A preliminary objection in the nature of a demurrer admits every well-pleaded fact in the complaint and all inferences reasonably deducible therefrom. It tests the legal sufficiency of the challenged pleadings and will be sustained only in cases where the pleader has clearly failed to state a claim for which relief can be granted. When ruling on a demurrer, a court must confine its analysis to the complaint.

**(Footnote continued on next page…)**

8

(Pa. Cmwlth. 2015) ("[E]ven if we were to conclude that it would be appropriate to transfer the damage claim to the court of common pleas,[13] that would be an unnecessary waste of judicial resources here, because [the petitioner's] action under Section 5725 of the [Act] is barred by the statute of limitations found in Section 5524(7) of the Judicial Code.[14]").

Commonwealth Respondents committed the acts underlying the instant action between 1998 and 2003. As indicated above, Counts One and Two in the Amended Complaint have a two-year statute of limitations under Section 5524(7) of the Judicial Code. *McCulligan*. Likewise, the remaining Counts in the

---

**(continued…)**

*Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010) (citations omitted). Therefore, in considering Inmate's claims, we are limited to the allegations raised in the Amended Complaint; any additional claims or arguments contained in his brief filed in opposition to Commonwealth Respondents' POs, and in support of his POs, will not be considered in disposing of any of the POs. *Id. See also Feigley v. Department of Corrections*, 872 A.2d 189, 193 n.3 (Pa. Cmwlth. 2005) ("[The inmate] attempts to augment the averments in his Petition [for Review] by making various allegations in his three briefs and by attaching documents thereto. Factual disputes are framed by pleadings, not briefs, therefore, we do not consider these additional allegations and documents.").

[13] *See* Section 5103(a) of the Judicial Code, 42 Pa. C.S. §5103(a) ("If [a] . . . matter is . . . brought in a court . . . of this Commonwealth which does not have jurisdiction of the . . . matter, the court . . . shall not . . . dismiss the matter, but shall transfer the record thereof to the proper tribunal of this Commonwealth, where the . . . matter shall be treated as if originally filed in the transferee tribunal on the date when the . . . matter was first filed in a court . . . of this Commonwealth.").

[14] 18 Pa. C.S. §5524(7). Section 5524(7) states, "The following actions . . . must be commenced within two years: . . . Any other action . . . to recover damages for injury to person or property which is founded on . . . intentional . . . conduct or any other action . . . sounding in trespass, including deceit or fraud, except an action . . . subject to another limitation specified in this subchapter."

9

Amended Complaint each have a two-year statute of limitations.[15]  *Id.  See also*

Section 5524(1) of the Judicial Code, 42 Pa. C.S. §5524(1) ("The following actions

[15] Moreover, the unviability of Inmate's causes of action in these Counts is apparent from the face of the Amended Complaint as well.  Indeed, as this Court has explained:

> In order to sustain a cause of action for malicious prosecution relating to a criminal prosecution, the plaintiff must prove that the defendant (1) instituted proceedings against the plaintiff, (2) without probable cause, (3) with malice, and (4) that the proceedings were terminated in favor of the plaintiff.  Probable cause is a reasonable ground of suspicion supported by circumstances sufficient to warrant that an ordinary prudent person in the same situation could believe a party is guilty of the offense charged.  Lack of probable cause is an indispensable element of the action, and an ultimate adjudication of innocence does not establish lack of probable cause to prosecute.  If a defendant can demonstrate probable cause, an absolute defense is established against an action for malicious prosecution, and the prosecutor's motive, malicious or otherwise, is immaterial.

> \* \* \*

> [The plaintiff] however, argues that it was error for the trial court to grant summary judgment because it did not address the [charging authorities'] active prosecution of the case *after* the filing of the complaint and after being advised of [the plaintiff's] legal defenses.  In other words, [the plaintiff] asserts that the failure of [the charging authorities] to discontinue their criminal prosecution is actionable in tort.

> Malicious prosecution of *civil* matters distinguishes between malicious use of process and malicious abuse of process; the former addresses the initiation of civil process and the latter its continuation.  However, there is no authority for [the plaintiff's] position that a prosecutor's failure to discontinue promptly a criminal process is actionable, and we decline to so expand the bounds of this common law tort.  A "[m]alicious prosecution is an action which runs counter to obvious policies of the law in favor of encouraging proceedings against those who are apparently

**(Footnote continued on next page…)**

10

. . . must be commenced within two years: . . . An action for assault, battery, false imprisonment, false arrest, malicious prosecution or malicious abuse of process."); Section 5524(2) of the Judicial Code, 42 Pa. C.S. §5524(2) ("The following actions . . . must be commenced within two years: . . . An action to recover damages for injuries to the person . . . caused by the wrongful act or neglect or unlawful violence or negligence of another.").[16]

---

**(continued…)**

> guilty. . . . It never has been regarded with any favor by the courts, and it is hedged with restrictions which make it very difficult to maintain."  "If this were not so, it would deter men from approaching the courts of justice for relief."

*Corrigan v. Central Tax Bureau of Pa., Inc.*, 828 A.2d 502, 505-06 (Pa. Cmwlth. 2003) (citations and footnotes omitted and emphasis in original). *See also Heck v. Humphrey*, 512 U.S. 477, 484 (1994) ("One element that must be alleged and proved in a malicious prosecution action is the termination of the prior criminal proceeding in favor of the accused."); *Townes v. City of New York*, 176 F.3d 138, 148 (2d Cir. 1999) ("Victims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy—including (where appropriate) damages for physical injury, property damage, injury to reputation, etc.; but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution.").

[16] Inmate preliminarily objects to Commonwealth Respondents' interposition of the statute of limitations POs at this stage of the proceedings because it is an affirmative defense that is properly raised as new matter in an answer to the Amended Complaint under Pa. R.C.P. Nos. 1028(a)(4) and 1030(a).  However, it is appropriate for this Court to overlook the technical requirements and dispose of the matter on these POs where, as here, the application of the relevant statute of limitations is apparent on the face of the Amended Complaint; Inmate merely raises the technical challenge and does not identify any additional facts that he would assert in response if this affirmative defense was raised later in new matter; and, as outlined above, the causes of action asserted in the Amended Complaint cannot be sustained and the continuation of this matter would not aid Inmate nor affect the result. *Greenberg v. Aetna Insurance Company*, 235 A.2d 576, 579-80 (Pa. 1967); *Feldman v. Hoffman*, 107 A.3d 821, 829-36 (Pa. Cmwlth. 2014); *Iudicello v. Department of Transportation*, 383 A.2d 1294, 1295 (Pa. Cmwlth. 1978); *Pelagatti v. Cohen*, 536 A.2d 1337, 1346 (Pa. Super. 1987); *Cooper v. Downingtown School District*, 357 A.2d 619, 621 (Pa. Super. 1976).

Inmate did not initiate this action until 2018, well outside the relevant statute of limitations. Accordingly, Inmate's POs will be overruled, Commonwealth Respondents' POs will be sustained, and the Amended Complaint will be dismissed as its filing is barred by the foregoing provisions of the Judicial Code. *See, e.g.*, *In re Risperdal Litigation*, 223 A.3d 633, 640 (Pa. 2019) ("Generally, 'a cause of action accrues, and thus the applicable limitations period begins to run, when an injury is inflicted.' 'Once a cause of action has accrued and the prescribed statutory period has run, an injured party is barred from bringing his cause of action.'") (citations omitted).[17]

Nevertheless, Inmate claims that the statute of limitations has been tolled because he was not aware of the illegal use of the initial pen register until Melissa Kessler (Kessler) visited him in prison in 2014,[18] and he was not made

---

[17] As the Superior Court has stated, in relevant part:

> Once the prescribed statutory period for commencing a cause of action has expired, the complaining party is barred from bringing suit. Lack of knowledge, mistake or misunderstanding does not toll the running of the statute of limitations. The defense of statute of limitations is not a technical defense, but substantial and meritorious. "Mere delay, extended to the limit prescribed, is itself a conclusive bar." There is a strong policy in Pennsylvania courts favoring the strict application of statutes of limitation. It is the duty of a party asserting a cause of action to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based and to institute suit within the prescribed statutory period. An action may be commenced by filing either a praecipe for a writ of summons or a complaint with the prothonotary.

*Booher v. Olczak*, 797 A.2d 342, 345 (Pa. Super. 2002) (citations omitted).

[18] Regarding his interaction with Kessler, the Amended Complaint states, in relevant part:

**(Footnote continued on next page…)**

12

aware of the illegality of the initial pen register, and the subsequent criminal investigation and prosecution based thereon, by Commonwealth Respondents within the controlling limitations period.[19] Inmate contends that because he was not provided discovery in the criminal prosecution demonstrating the alleged illegality of the initial pen register, Commonwealth Respondents' actions have tolled the applicable statute of limitations in the instant civil action under the Act.

The doctrine of equitable tolling protects any party who, "through no fault of [his] own, is unable to assert [his] rights in a timely manner."

---

**(continued…)**

> [Kessler] came to visit [Inmate] in prison at [SCI-] Smithfield on or about March 21-22, 2014.
>
> [Kessler] told [Inmate] that she heard that "the first pen register was started early without a valid court order." [Kessler] then asked [Inmate] "if he knew this fact." [Inmate] responded, "No I did not know the pen register was started early without a valid court order." Then [Kessler] asked [Inmate] "if he knew if any of the co-defendants challenged the illegal pen register." [Inmate] responded, "No I do not believe any of the co-defendants challenged the illegal pen register." [Kessler] asked Inmate "if any of the co-defendants knew if the pen register was started illegally." [Inmate] responded, "No I do not believe that they knew the pen register was started early without a valid court order."

Amended Complaint at 24-25, 34, 42, 52, 61-62.

[19] In considering the issue of the equitable tolling of the applicable statute of limitations, we are limited to considering the allegations raised in Inmate's POs and in his Answer to Commonwealth Respondents' POs. *See, e.g.*, *Prevish v. Northwest Medical Center—Oil City Campus*, 692 A.2d 192, 197-98 (Pa. Super. 1997), *aff'd*, 717 A.2d 1023 (Pa. 1998) (holding that a plaintiff waived the claim that the discovery rule tolled the applicable statute of limitations where the plaintiff did not plead sufficient facts in the complaint or in the responsive pleading to the defendant's preliminary objections that implicitly raised the statute of limitations issue, but first raised the claim in a statement of errors complained of on appeal).

*DaimlerChrysler Corporation v. Commonwealth*, 885 A.2d 117, 119 n.5 (Pa. Cmwlth. 2005), *aff'd*, 927 A.2d 201 (Pa. 2007). As a result, the "discovery rule applies to toll the statute of limitations in any case in which a party is reasonably unaware of his or her injury at the time his or her cause of action accrued." *Gleason v. Borough of Moosic*, 15 A.3d 479, 485 (Pa. 2011). Under the discovery rule, "the point at which a party should have been reasonably aware of his or her injury and its cause" fixes the commencement date of the statute of limitations period. *Id. See also Dalrymple v. Brown*, 701 A.2d 164, 167 (Pa. 1997) ("The discovery rule provides that where the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible.").

Likewise, equitable tolling may apply "[i]f through fraud or concealment the defendant causes the plaintiff to relax his or her vigilance or deviate from his or her right of inquiry." *DEEK Investment, L.P. v. Murray*, 157 A.3d 491, 497 (Pa. Super. 2017). If a defendant "has actively misled" a plaintiff, "then the statute of limitations may be equitably tolled." *Glover v. State Farm Mutual Automobile Insurance Company*, 950 A.2d 335, 339 (Pa. Super. 2008).

However, a defendant must have committed an affirmative, independent act of concealment upon which the plaintiff justifiably relied for the doctrine of fraudulent concealment to apply. *Kingston Coal Company v. Felton Mining Company, Inc.*, 690 A.2d 284, 291 (Pa. Super. 1997). "[M]ere silence in the absence of a duty to speak cannot suffice to prove fraudulent concealment." *Lange v. Burd*, 800 A.2d 336, 339 (Pa. Super. 2002) (citation omitted).

14

Taken as true, the allegations asserted in Inmate's Amended Complaint and Answer to Commonwealth Respondents' POs do not support the equitable tolling of the applicable statute of limitations herein. As noted above, as alleged in these pleadings, Inmate has filed a number of actions under the RTKL, the FOIA, and the PCRA, seeking to vindicate his rights upon learning of the illegality of the initial pen register in 2014. More specifically, on May 5, 2014, Inmate filed his fourth PCRA petition[20] in which he sought, *inter alia*, to unseal the documents relating to the initial pen register to demonstrate its illegality and to collaterally attack the underlying guilty pleas and the judgment of sentence imposed thereon. *See* Inmate's Brief of Support of POs and in Opposition to Commonwealth Respondents' POs, Exhibit A. Thus, as Inmate acknowledges, the information and documents that he seeks from Commonwealth Respondents to support his causes of action herein have been sealed by the trial court pursuant to

---

[20] This Court may take judicial notice of official court records and public documents at the preliminary objection stage. *See* Pa. R.E. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Williams v. Department of Corrections* (Pa. Cmwlth., No. 448 M.D. 2013, filed February 17, 2016), slip op. at 6 n.11 (holding that while the petitioner did not append the trial court's judgment of sentence to his petition for review, this Court would take judicial notice of it from the docket entries of his direct appeal to Superior Court in the matter); *Doxsey v. Pennsylvania Bureau of Corrections*, 674 A.2d 1173, 1174 (Pa. Cmwlth. 1996) (taking judicial notice of copies of official criminal court records, which the respondent had attached to its preliminary objection); *Styers v. Bedford Grange Mutual Insurance Company*, 900 A.2d 895, 899 (Pa. Super. 2006) (holding that a court may take judicial notice of a fact "which is incorporated into the complaint by reference to a prior court action") (citation omitted). *See also* 210 Pa. Code §69.414(a) ("Parties may also cite an unreported panel decision of this Court issued after January 15, 2008, for its persuasive value, but not as binding precedent.").

the Act[21] and, therefore, may not be disclosed by Commonwealth Respondents in the absence of a court order directing such disclosure.

---

[21] Indeed, Section 5715 of the Act states:

> Applications made, final reports, and orders granted pursuant to this subchapter and supporting papers and monitor's records *shall be sealed by the court and shall be held in custody as the court shall direct* and shall not be destroyed except on order of the court and in any event shall be kept for ten years. *They may be disclosed only upon a showing of good cause before a court of competent jurisdiction* except that any investigative or law enforcement officer may disclose such applications, orders and supporting papers and monitor's records to investigative or law enforcement officers of this or another state, any of its political subdivisions, or of the United States to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure. In addition to any remedies and penalties provided by this subchapter, *any violation of the provisions of this section may be punished as contempt of the court.*

18 Pa. C.S. §5715 (emphasis added).

Additionally, Section 5714(b) states, in relevant part:

> *Immediately upon the expiration of the order or extensions or renewals thereof, all monitor's records, tapes and other recordings shall be transferred to the judge issuing the order and sealed under his direction.* Custody of the tapes, or other recordings shall be maintained wherever the court directs. They shall not be destroyed except upon an order of the court and in any event shall be kept for ten years . . . . *The presence of the seal provided by this section, or a satisfactory explanation for its absence shall be a prerequisite for the disclosure of the contents of any wire, electronic or oral communication, or evidence derived therefrom*[.]

18 Pa. C.S. §5714(b) (emphasis added). *See also* 210 Pa. Code §65.75 ("A motion by an interested party to unseal an application, report, order, or other document previously placed under seal shall be in writing, shall state specifically the reason for the unsealing order and the

**(Footnote continued on next page…)**

16

Inmate's knowledge that the information and documents that he seeks from Commonwealth Respondents to bolster his causes of action were automatically sealed by the trial court pursuant to the provisions of the Act is evidenced by the numerous lawsuits that he and others have filed seeking to compel the trial court to unseal these items. *See, e.g.*, *Baney v. Clerk of Court* (Pa. Cmwlth., No. 280 M.D. 2014, filed July 29, 2014), *aff'd*, 118 A.3d 383 (Pa. 2015), slip op. at 1, 2 ("[Inmate] filed a Petition for Writ of Mandamus seeking to compel the Clinton County Clerk of Courts or Court Administrator to provide him with documents. [Inmate] avers that he sent the Clerk a request for documents he needed in order to support claims he sought to raise in a PCRA petition. On March 20, 2014, he requested from the case of *Commonwealth v. Carl Johnson*, the most recent filed PCRA; the amended PCRA from David Lindsay; the first four pen registers and wire taps from around 2001 prior to arrest; and the re-sentencing order where Johnson received a lower sentence. . . . [Inmate] fails to plead facts sufficient to establish a right to the relief he requests."); *Kessler v. Public Documents Pen Register and Wire Taps*, 180 A.3d 406, 407 (Pa. Super. 2018) ("[Kessler] appeals *pro se* from the [trial court's] order denying her motion to intervene and request to view sealed wiretap records in [Inmate's] completed criminal case."); *In re Thomas* (Pa. Super., No. 1915 MDA 2017, filed May 8, 2018), slip op. at 1 ("April Thomas (Rinehart) appeals *pro se* from the [trial court's] order denying her motion to intervene, requesting to view sealed wiretap

_____

**(continued…)**

use to be made of the unsealed application, report, order, or other document, and . . . shall be presented to the judge who ordered the same sealed. The Court, upon good cause shown, may order an application, report, order, or other document within the Prothonotary's file to be unsealed[.]").

records in [Inmate's] completed criminal case and for recusal of the presiding judge. Specifically, [Rinehart] seeks, *inter alia*, the unsealing of records relating to wiretapped conversation which stemmed from an investigation of illegal drug activity against her brother, [Inmate] (and others).").

However, unlike in the underlying criminal proceeding, the named Commonwealth Respondents are under no duty, and are actually precluded by court order, from releasing the documents that Inmate seeks from them to support the causes of actions that he has asserted against them in the instant Amended Complaint. *See, e.g.*, *State ex rel. State Highway Commission v. Texaco, Inc.*, 502 S.W.2d 284, 289 (Mo. 1973) ("By its very language [*Brady v. Maryland*, 373 U.S. 83, 86 (1963) (holding that the prosecution has a constitutional duty to disclose exculpatory evidence to the accused),] obviously applies only to criminal cases[.]"). As a result, Inmate has failed to allege or demonstrate the requisite fraudulent concealment on Commonwealth Respondents' part to toll the statute of limitations applicable to the causes of action raised in the Amended Complaint. *See Burd*, 800 A.2d at 339 ("[M]ere silence in the absence of a duty to speak cannot suffice to prove fraudulent concealment.").

Moreover, Inmate's difficulty in marshalling the sealed evidence that he seeks to support the causes of action asserted in the Amended Complaint against Commonwealth Respondents does not toll the applicable statute of limitations for those causes of actions under the discovery rule as well. *See Rivera v. City of Philadelphia*, (E.D. Pa., Civil Action No. 18-2066, filed August 3, 2018), slip op. at 3 ("Accepting Plaintiff's allegations as true, which the Court must at this stage, Plaintiff knew at least as early as the time she was acquitted in 2015 that she had been injured. Although Plaintiff alleges she obtained better evidence of

18

Defendant[ police officer's] improper conduct (related to a separate case) in March [] 2018, that is not a valid basis for invoking the discovery rule to toll the relevant statute of limitations period, which only applies where it was 'the latent nature of the injury that prevented [the claimant] from knowing of it.'") (citation omitted).

Based on the foregoing, the allegations raised in the Amended Complaint and the Answer to Commonwealth Respondents' POs show that, at a minimum, Inmate was reasonably aware of the injury and its cause as asserted in the causes of action against the named Commonwealth Respondents in this matter in March of 2014. As a result, the applicable two-year statute of limitations for these causes of action began to run at that time and ultimately expired in March of 2016. However, as noted above, Inmate did not file the instant Amended Complaint until April of 2018, so the causes of action contained therein are barred by the applicable statute of limitations.

Accordingly, Inmate's POs are overruled; Commonwealth Respondents' POs are sustained; and Inmate's Amended Complaint is dismissed with prejudice.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeremy Baney,                          :
                                       :
                        Plaintiff      :
                                       :
                v.                     : No. 752 M.D. 2018
                                       :
Mike Fisher, Michael T. Madeira,       :
Kevin Barr, Christopher Schmidt,       :
and Josh Shapiro of the Pa. Attorney   :
General's Office, Russ Burcher of      :
the Pa. State Police,                  :
                                       :
                        Defendants  :

**PER CURIAM**

**O R D E R**


        AND NOW, this 26th day of August, 2020, Plaintiff Jeremy Baney's preliminary objections to the preliminary objections of the above-named Defendants are OVERRULED; the preliminary objections of the above-named Defendants to Plaintiff Jeremy Baney's Amended Complaint are SUSTAINED; and Plaintiff Jeremy Baney's Amended Civil Complaint is DISMISSED with prejudice.  Plaintiff's Petition to Disclose and Inspect Pen Registers and Wiretaps is DISMISSED as moot.